**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| **LAVONDA MILLS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )       **No. 1:20-CV-253 PLC** |
| | ) |
| **KILOLO KIJAKAZI,[1]** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM AND ORDER**

Plaintiff Lavonda Mills seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act.  For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.       Background and Procedural History**

In May 2018, Plaintiff, who was born in July 1972, filed applications for DIB and SSI, alleging she was disabled as of August 26, 2011. (Tr. 188-200)  Plaintiff alleged her disability resulted from degenerative disc disease, "blackouts," diabetes, hypertension, sleep apnea, major depression, and schizoaffective disorder. (Tr. 220)  The Social Security Administration (SSA) denied Plaintiff's claim, and she filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 106-116, 119-120)

---

[1] Kilolo Kijakazi become the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing in February 2020. (Tr. 30-62)  On March 4, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 7-28)  Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-4, 184-187)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ[2]

### A.  Medical Records

Plaintiff's earliest mental health treatment notes in the record are from Boothheel Counseling Services, where she saw Dr. Pavan Palepu six times between August 2016 and December 2017 (Tr. 308-20)  At her August 2016 appointment, Dr. Palepu diagnosed Plaintiff with schizoaffective disorder-depressive type and continued her Cymbalta, Latuda, Topamax, and trazodone. (Tr. 309)  During all six visits, Dr. Palepu found Plaintiff's attention and concentration were "fair," neuro exam was "normal," judgment "intact", and she had no medication side effects. Plaintiff reported adequate sleep, stable or fair anxiety, and "no major stress." (Tr. 308-20)  Dr. Palepu regularly noted that Plaintiff "keeps busy with chores" and exercising at the YMCA.  (Tr. 308, 310, 312, 314, 316, 318)

In an annual assessment completed by a social worker at Bootheel Counseling and signed by Dr. Palepu in March 2017, Plaintiff reported "socializ[ing] more," "feeling less depressed," attending the YMCA, and "going back to church." (Tr. 327, 330)  She also "acknowledged auditory hallucinations, combative and irritable behavior, and paranoia." (Tr. 328)  Plaintiff "noted

---

[2] Because Plaintiff does not challenge the ALJ's determination of her physical residual functional capacity (RFC), the Court limits its discussion to the evidence relating to her mental impairments.

episodes of depression where she had become withdrawn, having little energy, oversleeping and overeating, and feelings of hopelessness," as well as "experiencing anxiety." (Tr. 328)  Plaintiff identified "stress build-up" as a trigger. (Tr. 328)

In March 2018, Plaintiff began seeing Dr. Sherifa Iqbal at Bootheel Counseling. (Tr. 321)  Dr. Iqbal treated Plaintiff three times between March and August 2018. (Tr. 321-23, 324-26, 414-17)  Dr. Iqbal prescribed Plaintiff trazodone, Topamax, Cymbalta, and Latuda.  (Tr. 326)  At all visits, Dr. Iqbal found Plaintiff's attention and concentration were "good," neuro exam was "normal," judgment was "good" or "intact," and Plaintiff had no medication side effects. (Id.)  Plaintiff reported attending church, wanting to workout at the YMCA more frequently, helping her daughter find a new residence, reading at the library, and hoping to secure a part-time job at the YMCA and/or start a ministry for young adults at her church. (Tr. 321, 324)

In an annual assessment with a Bootheel Counseling social worker in April 2018, Plaintiff reported poor concentration, poor comprehension, fatigue, worry, and stress, but the social worker observed that Plaintiff was "proactive, confident, and determined[.]" (Tr. 331)  Plaintiff also reported taking ministerial class "in order to develop a program for teenage girls with mental illness." (Id.)  Plaintiff reported her sleep quality was "good." (Tr. 333)  On examination, the social worker observed Plaintiff's mood and affect were appropriate, thought content was appropriate and realistic, thought process was coherent, and memory, judgment, and insight were "good." (Tr. 333-34)

In September 2018, Bootheel Counseling began providing Plaintiff bimonthly home visits from a Community Support Adult (CSA).  (Tr. 514)  At a home visit in October 2018, Plaintiff reported finishing her pastoral class and discussed her plans to continue classes and "start a youth group at her church."  (Tr. 517)  In December 2018, Plaintiff was "doing well," and in February

3

2019, Plaintiff stated that she was "staying very, very busy."  (Tr. 534)  In March and April 2019, Plaintiff communicated her desire to discontinue the home visit program, preferring to receive "case management services" through her primary care provider, Nurse Practitioner (NP) Melinda Lambert. (Tr. 545, 547)

Between November 2018 and October 2019, Physician Assistant (PA) Daniel Beck at Bootheel Counseling managed Plaintiff's mental health medications under the supervision of staff psychiatrist Dr. Sayed Sayeed.  (Tr. 520-24, 535-39, 552-56, 557-62, 563-68)  PA Beck prescribed Plaintiff trazodone, Topamax, Cymbalta, and Latuda.  (Id.)  At each of Plaintiff's five visits with PA Beck, she reported that she was stable and compliant with her medications, and PA Beck noted that her attention and concentration were "good" or "appropriate," judgment was "good," and neuro exam was "normal." (Id.)

B.  Medical Source Statements

Dr. Sayeed completed mental medical source statements (MSS) on identical checklist forms for Plaintiff in November 2018 and July 2019.  (Tr. 426-27, 499-500)  In the November 2018 MSS, Dr. Sayeed listed Plaintiff's mental diagnosis as "schizoaffective, depressive type." (Tr. 426)  Dr. Sayeed did not identify any side effects from Plaintiff's medications, but estimated that she would miss approximately four days of work per month and be "off task" twenty-five percent or more of the workday.  (Id.)  On the checklist of twenty mental functions, Dr. Sayeed noted that Plaintiff was "markedly limited"[3] in each area.  (Tr. 426-27)

---

[3] The MSSs completed by Plaintiff's providers defined "markedly limited" as "[m]ore than Moderate, but less than extreme resulting in limitations that seriously interferes with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." (Tr. 420, 426, 488, 499)

In the July 2019 MSS, Dr. Sayeed noted that Plaintiff's medications caused "lack of focus," and he opined that Plaintiff's mental impairment would cause her to miss approximately two days of work per month and be "off task" ten percent of the workday.  (Tr. 499)  Dr. Sayeed found that Plaintiff was "moderately limited"[4] in the following areas of mental functioning: (1) understand and remember detailed instructions; (2) maintain attention and concentration for extended periods of time; (3) perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances; (4) work in coordination with or proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) respond appropriately to changes in the work setting; (7) travel to unfamiliar places or use public transportation; and (8) set realistic goals or make plans independently of others. (Id.)  Dr. Sayeed stated that Plaintiff was "mildly limited" in all areas of social functioning, as well as the ability to:  (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out detailed instructions; (4) sustain an ordinary routine without special supervision; and (5) make simple work-related decisions.  (Tr. 499-500)

Plaintiff's primary care provider, NP Melinda Lambert, completed mental MSSs for Plaintiff in October 2018 and May 2019.  (Tr. 419-24, 487-88)  The mental MSSs were identical checklist forms, and NP Lambert's assessments were the same on each.  NP Lambert stated that Plaintiff had schizoaffective disorder, depressive type, and her medications caused her to experience drowsiness, weakness, dizziness, lack of focus, and nausea.  (Tr. 419, 487) NP Lambert

---

[4] The MSS defined "Moderately Limited" as "Impairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." (Tr. 420, 426, 488, 499)

estimated that Plaintiff's mental condition would cause her to miss four or more days of work per month and be "off task" twenty-five percent or more of the workday.  (Tr. 419, 487)

NP Lambert opined that Plaintiff was "extremely limited"[5] in the ability to: (1) complete a normal workday and workweek without interruption from psychologically based symptoms; and (2) perform at a consistent pace without unreasonable rest periods. (Tr. 419-20, 487-88)  She stated that Plaintiff had "marked" limitations in the ability to: (1)  maintain attention and concentration for extended periods of time; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) sustain an ordinary routine without supervision; (4) work in coordination with or proximity to others without being distracted by them; and (5) travel to unfamiliar places or use public transportation. (Tr. 419-20)   NP Lambert found "moderately limited" in the ability to: (1) remember locations and work-like procedure; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) make simple work related decisions; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in the work setting; and (9) set realistic goals or make plans independently of others. (Id.)  Finally, NP Lambert noted "mild" limitations in the five remaining areas of mental functioning abilities. (Id.)

C.  Hearing Testimony

At the hearing before the ALJ, Plaintiff testified that she had a twelfth-grade education, previously worked as a certified medication technician, and lived with her thirty-year-old daughter.

---

[5] The MSS defined "Extremely Limited" as "Impairment level preclude useful functioning in this category. Considered to be 3 standard deviations below the norm, or 90% overall reduction in performance." (Tr. 419)

(Tr. 38, 44)  Plaintiff affirmed that she suffered schizoaffective disorder, depressive type, and stated that she saw a psychiatrist every three months, but she was not seeing a counselor or therapist.  (Tr. 42-43)  Plaintiff explained her medications "help[ed]" her "psychological issues," and she understood that she would "go back to the way [she] was" if she were to stop taking them. (Id.)  When the ALJ asked if her psychological medications "take care of all the issues now," Plaintiff stated, "[t]hey're doing pretty good." (Tr. 49-50)  Plaintiff stated that her medications controlled her blackouts and her depression, although she isolated herself for "maybe a day" once or twice per month.  (Tr. 50, 53)

Plaintiff testified that she struggled to manage stress and therefore avoided the news and other "stressful situations." (Tr. 50)  Plaintiff described "issues with memory," such as difficulty remembering what she "just read … every time she [sat] down to read." (Tr. 52)  She also had difficulty focusing and paying attention to reading materials, and estimated that she could read for about thirty minutes at a time. (Id.)  Plaintiff reported that her pain medication caused her drowsiness.  (Tr. 53)

Plaintiff did not perform household chores, like sweeping or vacuuming, but she did laundry "just a little bit at a time" and prepared food in the microwave.  (Tr. 44)  Plaintiff was able to drive a car "in town." (Tr. 54)  She went to the grocery store "probably once a week," and she preferred to go in the early morning because crowds caused her anxiety.  (Tr. 51)  Plaintiff regularly read the Bible and "encouraging things" on Facebook.  (Tr. 45-46)

A vocational expert also testified at the hearing. (Tr. 58-61)  The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education, and prior work experience who was limited to a "range of light work" with the following limitations:

> [T]hey could lift and carry up to 20 pounds occasionally and lift or carry up
> to 10 pounds frequently; could stand and/or walk for six hours of an eight-hour

workday and sit for six hours of an eight-hour workday.  They can never climb ladders, ropes, and scaffolds, kneel, crouch, and crawl; and can occasionally climb ramps and stairs, balance, and stoop.

They can occasionally use foot control, bilaterally.  They should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration.  They are able to carry out detailed but uninvolved instructions, and the performance of simple, routine, and repetitive tasks in a low-stress work environment; with no fast-paced production requirements; involving simple work-related decisions; and with only occasional judgment and workplace changes.  And they can occasionally respond to and have interaction with supervisors, co-workers, and the general public.

(Tr. 57-58)  The vocational expert responded that this person could not perform Plaintiff's past work as a certified medication technician, but could perform some light, unskilled jobs, such as pricer, housekeeper, or folder. (Tr. 58-59)

The ALJ then proposed a second hypothetical individual with the same non-exertional limitations as the first hypothetical but limited to sedentary work.  (Tr. 59)  The vocational expert concluded that some sedentary jobs would be possible, including document preparer, weight tester, and addresser. (Tr. 59-60)  When the ALJ added the limitation of being off task more than fifteen percent of the time or missing two or more days of work per month, the vocational expert testified that this individual could not perform any work.  (Tr. 60-61)

## III.    Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability.  42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a).  The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy ....” 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that she has a “severe impairment,” defined as “any impairment or combination of impairments which significantly limits [claimant’s] physical or mental ability to do basic work activities.” 20 C.F.R. §§ 404.152(c), 416.920(c).  “The sequential evaluation process may be terminated at step two only when the claimant’s impairment or combination of impairments would have no more than a minimal impact on her ability to work.” Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quotation omitted).  At step three, the ALJ considers whether the Plaintiff’s impairment meets or equals an impairment listed in 20 C.F.R., Subpart P, Appendix 1.  Id. at 404.1520(d).

Prior to step four, the Commissioner must assess the claimant’s residual functional capacity (RFC), which is “the most a claimant can do despite [his or her] limitations.”  Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)).  At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant’s RFC with the physical and mental demands of the claimant’s past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011).  If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  Id.

Through step four, the burden remains with the claimant to prove that he or she is disabled.  Moore, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that,

given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.   20 C.F.R §§ 404.1520(g), 416.920(g); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012).  If the claimant cannot make an adjustment to other work, then she will be found to be disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV.    ALJ's Decision

Applying the five-step evaluation process, the ALJ determined that Plaintiff: (1) had not engaged in substantial gainful activity since May 5, 2016; and (2) had the severe impairments of "degenerative disc disease of the cervical and lumbar spine with bulging discs status-post stimulator implantation, type II diabetes mellitus with polyneuropathy/polyarthritis, obesity, and schizoaffective disorder-depressive type." (Tr. 13)  Additionally, the ALJ found that Plaintiff had the non-severe impairments of "obstructive sleep apnea, anemia, hypertension, Vitamin D deficiency, fatty liver, headaches, GERD, restless leg syndrome, hyperlipidemia, and endometrial polyp." (Id.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Park 404, Subpart P, Appendix 1. (Tr. 14)  Based on his review of Plaintiff's testimony and medical records, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 21)  The ALJ determined that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [C]laimant can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently, stand and/or walk for two hours out of an eight-hour

workday, and sit for six hours out of an eight-hour workday. The claimant should be allowed to sit, stand or walk alternatively, provided that they are off task less than 10% of the work period. The claimant can never climb ladders, ropes and scaffolds, kneel, crouch and crawl; and can occasionally climb ramps and stairs, balance, and stoop. The claimant can occasionally use foot controls bilaterally. The claimant should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration. The claimant is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and workplace changes. The claimant can occasionally respond to and have interaction with supervisors, coworkers and the general public.

(Tr. 16-17)

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a medication technician because it required "medium exertional capacity." (Tr. 22)  At step five, the ALJ considered Plaintiff's RFC, age, education, and work experience "in conjunction with the Medical-Vocational Guidelines" and the vocational expert's testimony, and found that Plaintiff was able to perform other jobs that existed in significant numbers in the national economy, such as document preparer, weight tester, and addresser. (Tr. 23)  The ALJ therefore concluded Plaintiff was not disabled. (Id.)

**V.     Discussion**

Plaintiff claims the ALJ erred in "failing to include the credible limitations of record in the RFC or explain the omission as required by SSR 96-8p[.]"  [ECF No. 17 at 1]  In response, the Commissioner argues that the RFC is consistent with the credible limitations contained in the medical opinions and substantial evidence supports the mental RFC determination. [ECF No. 22]

A.   Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind

would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." Id. (quoting Posch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Medical Opinion Evidence and RFC Assessment

Plaintiff argues that remand is required because, despite finding persuasive Dr. Sayeed's and NP Lambert's opinions as to Plaintiff's moderate limitations, the ALJ neither accounted for those limitations in the RFC nor explained why the RFC deviated from them. [ECF No. 17] Defendant counters that "[s]ubstantial medical and non-medical evidence supports the ALJ's conclusions, and there is no error warranting remand." [ECF No. 22 at 4]

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). See also Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest

of the relevant evidence."[6]  20 C.F.R. §§ 404.1527(b), 416.927(b).  An ALJ's RFC assessment "must always consider and address medical source opinions" and, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996)

The ALJ considered the MSSs completed by Dr. Sayeed and NP Lambert and determined that three of the four opinions were "partially persuasive."[7]  In regard to Dr. Sayeed's July 2019 MSS, the ALJ determined that the "the medical evidence of record does not support the assessment that the claimant would be absent two days a month and off task 10 percent of the workday."  (Tr. 21)  The ALJ further reasoned that this assessment was "inconsistent with [Plaintiff's] report that she wanted to start a ministry for young teenage girls in her church" and her testimony that she "drives locally, goes to the store once a week, interacts with others on Facebook, reads the Bible, lives with her daughter, and uses psychiatric medications to control her symptoms."  (Id.)  However, the ALJ credited Dr. Sayeed's opinion as to Plaintiff's mental-functioning limitations because "more recent evidence supports mild to moderate limitation in each of the mental function domains."  (Id.)

The ALJ similarly found NP Lambert's MSSs of October 2018 and May 2019 "only partially persuasive."  (Tr. 20)   The ALJ accepted NP Lambert's opinion that Plaintiff had mild/moderate limitations in the areas of understanding and memory, social interaction, and adaptation.  (Id.)   However, the ALJ discounted NP Lambert's opinion that Plaintiff had

---

[6] The new regulations apply to Plaintiff's claim because she filed her applications after March 27, 2017.  20 C.F.R. § 404.1520c. "Under the revised regulations, 'treating physicians are [no longer] entitled to special deference.'" Austin v. Kijakazi, --- F.4th ---, 2022 WL 16559226 (8th Cir. Nov. 1, 2022) (quotation omitted); see also 20 C.F.R. § 404.1520c(a)).

[7] The ALJ found that the fourth opinion, Dr. Sayeed's November 2018 MSS, in which he stated that Plaintiff was "markedly limited" in all areas of mental functioning, was not persuasive.  (Tr. 21)  Plaintiff does not challenge the ALJ's assessment of Dr. Sayeed's November 2018 MSS.

marked/extreme limitation with regard to sustained concentration and persistence because: (1) she "merely checked boxes on a form"; (2) she "provided no objective medical evidence to support such extreme limitation"; and (3) "the medical record does not support more than moderate limitation in any mental functioning domain." (Id.)  Additionally, the ALJ determined that NP Lambert's opinion that Plaintiff would be off task twenty-five percent of the day and absent four or more days per month "was not supported by her own evaluation of the claimant" and conflicted with Plaintiff's activities of daily living and evidence that her psychotropic medications controlled her symptoms.

Based on the opinion evidence and Plaintiff's medical records, the ALJ found that Plaintiff's schizoaffective disorder, depressive type caused "moderate difficulties with understanding remembering, or applying information; concentration, persistence or maintenance pace; and adapt and manage oneself[.]" (Tr. 22)  Accounting for these limitations, the ALJ determined that Plaintiff had the mental RFC to: (1) "carry out detailed but uninvolved instructions" (2) "in the performance of simple, routine and repetitive tasks" (3) "in a low stress work environment" (4) with "no fast-paced production requirements" and (5) involving "simple work-related decisions," (6) "only occasional judgment and workplace changes," and (7) "occasional interactions" with supervisors, coworkers, and the general public. (Tr. 17, 22)

Plaintiff does not challenge the ALJ's evaluation of the opinion evidence, but rather asserts that the "ALJ failed to resolve the inconsistencies between the evidence he found persuasive and the RFC." [ECF No. 17 at 3]  Plaintiff specifically argues that the RFC fails to account for Dr. Sayeed's and NP Lambert's opinions that Plaintiff had moderate limitations, or a thirty-percent reduction, in the ability to: (1) maintain attention and concentration for extended periods; (2) understand and remember detailed instructions; and (3) make simple work-related decisions. [Id.]

14

1.   Maintain attention and concentration for extended periods

Plaintiff asserts that the RFC is not consistent with Dr. Sayeed's and NP Lambert's opinions that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and that the RFC for "simple, routine, and repetitive tasks" does not account for this limitation.  First, "moderate limitation does not mean that the claimant cannot function at all in the area."  Short v. Berryhill, No. 2:15-CV-88 NAB, 2017 WL 1164771, at *3 (E.D. Mo. Mar. 29, 2017).  Using the definition of "moderately limited" employed by Dr. Sayeed and NP Lambert, Plaintiff had a thirty percent reduction, or was thirty percent worse than the average person, in the area of attention and concentration.[8]  See Brill v. Saul, No. 3:20-CV-5064 NKL, 2021 WL 5157488, at * (W.D. Mo. Nov. 5, 2021).

Furthermore, the Eighth Circuit has held that limitations to simple, routine, and repetitive tasks may adequately account for moderate limitations in attention and concentration. See, e.g., Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) (moderate impairments in concentration, persistence or pace were "consistent with being able to understand, remember, and carry out simple instructions while performing non-detailed tasks"); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (the ALJ's hypothetical question "concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [the plaintiff's] deficiencies

---

[8] The Commissioner argues that Plaintiff's "repeated reliance on the definition of 'moderate' in NP Lambert's and Dr. Sayeed's form as reflecting a 30 percent overall reduction in performance is misplaced" and the ALJ "was not required to adopt the form's definition of 'moderate' where it differed from the term as generally used by the agency."  [ECF No. 22 at 11]  The Commissioner cites Barber v. Astrue, No. CIV. 11-3046, 2012 WL 3230469, at *14 (W.D. Ark. Aug. 6, 2012).  However, in Barber, the Court adopted the common definition because the form did not define moderate.  "The Court sees no reason to import a different definition of moderate that [the medical sources] did not intend to apply when completing the MSS."  Brill v. Saul, No. 3:20-CV-5064 NKL, 2021 WL 5157488, at *4 n. 3 (W.D. Mo. Nov. 5, 2021).  The Court will therefore interpret NP Lambert's and Dr. Sayeed's opinions based on the definition of "moderately limited" contained in the MSSs.

in concentration, persistence, or pace"). Significantly, in this case, "simple, routine, and repetitive tasks" was not the only limitation in the RFC relevant to limitations in maintaining attention and concentration for extended periods. The ALJ also included requirements for uninvolved instructions, a low-stress work environment, no fast-paced production requirements, and only occasional interactions with others. These limitations, combined with a limitation to simple, routine, and repetitive tasks, create an RFC that is consistent with a moderate limitation in Plaintiff's ability to maintain attention and concentration for extended periods.

The cases Plaintiff cites in support of her claim that an RFC for simple, repetitive, and routine tasks does not account for moderate limitations in attention and concentration are distinguishable. Most notably, those cases involved the improper evaluation of medical opinion evidence, which resulted in RFCs that were not supported by substantial evidence. See, e.g., Dornbach v. Saul, No. 4:20-CV-36 RLW, 2021 WL 1123573 (E.D. Mo. Mar. 24, 2021) (among other errors, the ALJ failed to properly evaluate the medical opinion evidence and based the RFC on an opinion that should have been discredited); Elder v. Berryhill, No. 4:17-CV-873 DDN, 2018 WL 262832 (E.D. Mo. Jan. 2, 2018) (ALJ erred in weighing the opinion of treating psychiatrist and determining his RFC); Watts v. Colvin, No. 4:15-CV-1359 NCC, 2016 WL 4429697 (E.D. Mo. Aug. 22, 2016) (ALJ failed to weigh a medical opinion, which described functional limitations more restrictive than those determined by the ALJ, and formulated an RFC that did not account for Plaintiff's moderate limitations in ability to maintain attention and concentration).

Unlike the cases upon which Plaintiff relies, the instant case does not involve allegations that the ALJ either improperly assessed the medical opinion evidence or rejected without explanation persuasive medical opinions that were supported by the record as a whole. To the contrary, the ALJ found that Plaintiff had moderate limitations in all areas of mental functioning

16

and accounted for those limitations in the RFC.  Plaintiff did not satisfy her burden to show that the RFC did not encompass the moderate limitations on concentration and attention that the ALJ found credible.

> 2.   Ability to Understand and Remember Detailed Instructions

Plaintiff briefly argues, without citation to supporting authority, that the RFC "to carry out detailed but uninvolved instructions" is not consistent with the ALJ's finding, based on the MSSs, that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions.  [ECF No. 17]  In response, the Commissioner asserts that the ALJ "amply accounted for the mild limitations he found supported by the record[.]"  [ECF No. 22 at 11]

The Court finds no conflict between the limitations credited by the ALJ and those included in the RFC.  The ALJ did not, as Plaintiff suggests, formulate an RFC for carrying out detailed instructions without limitation.  Rather, the ALJ found that Plaintiff had the RFC to "carry out detailed *but uninvolved* instructions," which accounted for Plaintiff's thirty-percent reduction in understanding and remembering detailed instructions.  See, e.g., Galloway v. Kijakazi, 46 F.4th 686, 690 (8th Cir. 2022) ("Our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized.") (quotation omitted).  "[T]he ALJ is not required to copy the exact wording of the limitation contained on the checklist form."  Short, 2017 WL 1164771, at *3.

Plaintiff further claims that her limitations in understanding and remembering detailed instructions preclude her from performing the jobs identified by the ALJ at step five of the sequential evaluation.  More specifically, Plaintiff asserts that the jobs of document preparer, weight tester, and addresser exceeded her RFC because, according to the Dictionary of Occupational Titles (DOT), they have reasoning levels of 2 and 3.  The Commissioner counters

that the reasoning levels of the jobs identified by the ALJ are consistent with the abilities of someone with the limitations in the ALJ's RFC finding.

At step five of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008).  "A vocational expert's testimony constitutes substantial evidence [that suitable jobs exist in significant numbers] when it is based on a hypothetical that accounts for all of the claimant's proven impairments."  Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010) (citing Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir.2005)).  However, vocational expert testimony "that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet the burden.'"  Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014) (quoting Kemp v. Colvin, 743 F.3d 630, 632 (8th Cir. 2014)).  When a conflict exists, the ALJ has an "affirmative responsibility" to ask about the conflict and receive an explanation before relying on the vocational expert testimony.  Welsh v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014).

The DOT assigns each job a reasoning level "that corresponds to the ability to follow instructions and solve problems that is required for satisfactory job performance."  Hulsey, 622 F.3d at 923.  Reasoning level 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  DOT, App. C.  Reasoning level 3 removes the limitation on the type of instructions, requiring the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  DOT, App. C.

Here, the ALJ determined, based on the vocational expert's testimony, that there existed significant numbers of jobs in the national economy that Plaintiff could perform, including the unskilled jobs of  addresser (reasoning level 2), document preparer (reasoning level 3), and weight

18

tester (reasoning level 3).   As Plaintiff's RFC includes the ability to carry out detailed but uninvolved instructions, there is no apparent conflict between the RFC and ALJ's finding that Plaintiff was able to perform the job of addresser, with reasoning level 2.

Whether there is a conflict between reasoning level 3 and Plaintiff's RFC is a closer question.   However, the Eighth Circuit has found that the "failure to address any potential inconsistency between the RFC's limitation to simple, routine, repetitive work and the DOT's requirement of level three reasoning [did] not require a remand."  Welsh, 765 F.3d at 930.  See also Bachman v. Saul, No. 2:19-CV-31 NCC, 2020 WL 5801031, at *4 (E.D. Mo. Sep. 29, 2020). Moreover, the reasoning level definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category.  Moore, 623 F.3d at 604.  "…DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range."  Id. (quoting Page v. Astrue, 484 F.3d 1040, 1045 (8th Cir. 2007)).  "In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT."  Id. (quoting Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000).   Accordingly, the Court finds that substantial evidence supports the ALJ's determination at step five.

### 3.   Ability to Make Simple Work-Related Decisions

Finally, Plaintiff claims that the RFC for simple work-related decisions does not encompass Dr. Sayeed's and NP Lambert's opinions, and the ALJ's finding, that Plaintiff was moderately limited in this functional area.  As previously discussed, this definition of "moderately limited" does not preclude all functioning in a given area.  Here, the opinions credited by the ALJ defined "moderately limited" to mean "impairment levels are compatible with some, but not all, useful functioning" or a "30% reduction in performance."  Plaintiff has not satisfied her burden to show

that the ALJ's determination of her RFC exceeded her moderately limited ability to make simple work-related decisions.

**VI.     Conclusion**

For the reasons discussed above, the Court finds that the ALJ based his determination on the evidence in the record, including the medical opinions.  Substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff was not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of November, 2022